**[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 87.]**

BUSH & COOK LEASING, INC., APPELLANT, *v*. TRACY, TAX COMMR., APPELLEE.

[Cite as *Bush & Cook Leasing, Inc. v. Tracy*, 1997-Ohio-404.]

*Taxation—Franchise tax—Sales and leasing of trucks, vans, and other commercial vehicles and equipment—Manner in which company records leases on its books is the manner in which it must report them for the franchise tax.*

(No. 96-1454—Submitted April 15, 1997—Decided June 25, 1997.)

APPEAL from the Board of Tax Appeals, Nos. 94-H-167 and 94-H-168.

———————————

{¶ 1} Bush & Cook Leasing, Inc. ("Bush & Cook"), appellant, an Ohio corporation with its principal place of business in Wilmington, Ohio, sold and leased trucks, vans, and other commercial vehicles and equipment throughout the United States. It conducted most of its business from its offices in Ohio and supplied most of the vehicles from its inventory in Ohio. Bush & Cook leased these vehicles under sales-type leases, direct financing leases, and operating leases. The vast majority of the leases were sales-type and direct financing leases, which are the only leases at issue in this case.

{¶ 2} Bush & Cook recorded these disputed leases as intangible assets under Fair Accounting Standards Board Statement No. 13 ("FASB 13"), a generally accepted accounting principle. According to FASB 13, a lessor should treat leases that transfer substantially all the benefits and risks incident to the ownership of a vehicle subject to the lease, such as the disputed leases, as a sale or financing of the vehicle. The lessor capitalizes the leases as intangible assets. According to FASB 13, to receive this treatment, a lease must meet at least one of the following criteria:

"a. The lease transfers ownership of the property to the lessee by the end of the lease term;

"b. The lease contains an option to purchase the leased property at a bargain price;

"c. The lease term is equal to or greater than seventy-five percent of the estimated economic life of the leased property;

"d. The present value of rental and other minimum lease payments equals or exceeds ninety percent of the fair value of the leased property less any investment tax credit retained by the lessor."

{¶ 3} The lease must also meet both of the following criteria:

"a. Collectibility of the minimum lease payments is reasonably predictable;

"b. No important uncertainties surround the amount of unreimbursable costs yet to be incurred by the lessor under the lease."

{¶ 4} Bush & Cook complied with FASB 13 and recorded the disputed leases as "net investment as lessor in" the leases. It reported revenue received from these leases as "sales of vehicles and related equipment" and as "interest earned on capitalized leases." Bush & Cook did not record the vehicles and equipment subject to the leases as its assets and did not depreciate them on its books.

{¶ 5} In contrast, Bush & Cook treated all other types of leases as operating leases under FASB 13 and recorded the leases as tangibles on its books. It valued these leases at the cost of the leased vehicle and reported revenue as "rental income from operating leases." Bush & Cook depreciated these vehicles on a straight-line basis over the lease term.

{¶ 6} Nevertheless, in Bush & Cook's franchise tax reports for 1986, 1987, and 1989, it had to compute a property fraction for the net worth method under R.C. 5733.05(A). For this purpose, it was to allocate, in and out of Ohio, the amount of its property. For the disputed leases, it calculated this property fraction according to the physical location of the vehicle subject to the lease.

{¶ 7} The Tax Commissioner, appellee, however, audited these returns and disagreed with this calculation. Instead, the commissioner regarded the leases as

intangible assets and allocated them totally to where Bush & Cook has its principal place of business, *i.e.*, Ohio. He reallocated the amounts shown as the value of these leases entirely to Ohio, thus increasing the numerator of the fraction and increasing the net worth attributable to Ohio. Bush & Cook challenged this decision in appeals to the Board of Tax Appeals ("BTA.")

{¶ 8} The BTA took a different tack. The BTA declined to adopt the commissioner's contention that the book treatment of these amounts controls the franchise tax treatment of them. It agreed with Bush & Cook that the BTA needed to look into the substance of the leases. However, it did not approve of Bush & Cook's approach, but, rather, applied a "true-object" test that it traced through this court's decisions. It concluded that the true object of the parties in these leases was the sale of the vehicles and not the leasing of them. The BTA took into account as factors in reaching this conclusion that (1) the lessees generally purchased the vehicles at the end of the lease terms, (2) the FASB 13 treatment was "a statement by the accounting profession as to the accounting sense of these transactions," and (3) harmony should exist between the franchise tax and the book treatments of these leases. Accordingly, the BTA affirmed the commissioner's orders.

{¶ 9} The cause is now before this court upon an appeal as of right.

————————————

*Coolidge, Wall, Womsley & Lombard Co., L.P.A., Sam Warwar* and *Lance A. Gildner*, for appellant.

*Betty D. Montgomery*, Attorney General, and *James C. Sauer*, Assistant Attorney General, for appellee.

————————————

**Per Curiam.**

{¶ 10} Bush & Cook contends that the book treatment of an item is not controlling in characterizing the property as an intangible versus a tangible asset. It also contends that the BTA incorrectly adopted the true-object test or incorrectly

applied it. Bush & Cook claims that the substance of the leases was to lease tangible personal property and not to sell vehicles to lessees. The commissioner, to the contrary, maintains that the manner in which Bush & Cook recorded these leases on its books is the manner in which it must report them for the franchise tax. We agree with the commissioner and affirm the BTA's decision.

{¶ 11} "R.C. 5733.06 calculates the franchise tax on the net-worth and the net-income bases and charges the corporation the higher amount." *Gray Horse, Inc. v. Limbach* (1993), 66 Ohio St.3d 631, 632, 614 N.E.2d 1038, 1039. "[The net-worth base for] [t]he franchise tax provided by R.C. 5733.01 through 5733.27 [now 5733.98] is computed by applying a 'property' fraction to one-half of the share value of the company, and a 'business done' fraction to the remaining one-half of the share value of the company. The share value of a company, under R.C. 5733.05, consists of the total book value of that company's capital, surplus, undivided profits, and reserves, with certain specified exceptions." *Armour & Co. v. Kosydar* (1976), 46 Ohio St.2d 450, 451, 75 O.O.2d 502, 349 N.E.2d 301, 302.

{¶ 12} R.C. 5733.05 sets forth these required calculations:

"The annual corporation report determines the value of the issued and outstanding shares of stock of the taxpayer, which under division (A) or (B) of this section is the base or measure of the franchise tax liability. * * * For the purpose of this section, the value of the issued and outstanding shares of stock of any such corporation shall be deemed to be the value as calculated in accordance with either division (A) [net worth] or (B) [net income] of this section.

"(A) The total value, as shown by the books of the company, of its capital, surplus, whether earned or unearned, undivided profits, and reserves * * *:

"* * *

"The commissioner shall then determine the base upon which the fee provided for in section 5733.06 of the Revised Code shall be computed as follows: divide into two equal parts the value as determined in division (A) of this section

of the issued and outstanding shares of stock of each corporation filing such report. Take one part and multiply it by a fraction whose numerator is the net book value of all the corporation's property owned or used by it in this state, and whose denominator is the net book value of all its property wherever situated * * *.

"* * *

"In determining the value of intangible property, including capital investments, owned or used in this state by either a domestic or foreign corporation, the commissioner shall be guided by sections 5709.02 and 5709.03 of the Revised Code * * *."

{¶ 13} Under R.C. 5709.02, intangible personal property of persons "residing in this state" is taxable in Ohio unless sitused in another state as a receivable under R.C. 5709.03(A). Here, Bush & Cook stipulated that it was an Ohio corporation with its principal place of business in Ohio and that most of its transactions originated from or were conducted or managed in Ohio. Thus, Bush & Cook's intangible assets have an Ohio situs.

{¶ 14} In *Natl. Tube Co. v. Peck* (1953), 159 Ohio St. 98, 50 O.O. 74, 111 N.E.2d 11, paragraph five of the syllabus, we stated:

"Under Sections 5497 [now R.C. 5733.03] and 5498 [now R.C. 5733.05], General Code, 'book value' shall be determined from the books of a corporation which are generally regarded as the accounting records of such corporation and are kept in the ordinary course of the business of the corporation in accordance with any sound and generally recognized and approved accounting system, even though other records of the corporation may disclose that the market value of some of the assets of the corporation differs from the value thereof recorded in such books. (Paragraphs one, two and three of the syllabus in *Wheeling Steel Corp. v. Evatt, Tax Commr.* (1944), 143 Ohio St. 71 [28 O.O. 21, 54 N.E.2d 132], approved and followed.)"

**{¶ 15}** In *Natl. Tube Co.*, we rejected the commissioner's argument that he should disregard book value and reappraise every corporation's property according to its market value. In paragraph three of the syllabus, we did state that the book value of an asset may be more or less than its value. But, we concluded that the General Assembly desired "to do away with the tremendous amount of work, which would be involved in reappraising each year all the assets of every corporation." *Id.* at 105, 50 O.O. at 77, 111 N.E. 2d at 15.

**{¶ 16}** Therefore, we ruled that the General Assembly provided for the book value to be the basis for the assessment of the corporation franchise tax. We did, however, strengthen this ruling — we directed the taxpayer keep its books according to generally accepted accounting principles to obtain this outcome.

**{¶ 17}** R.C. 5733.05(A) does order a taxpayer to determine the value of its issued and outstanding shares of stock according to "[t]he total value, *as shown by the books of the company*." (Emphasis added.) Moreover, R.C. 5733.03(H) requires the taxpayer to include in its annual report, "[t]he location and value of the property owned or used by the corporation *as shown on its books*, both within and without the state, given separately." (Emphasis added.) In *Edwards Industries, Inc. v. Tracy* (1996), 74 Ohio St.3d 643, 646, 660 N.E.2d 1181, 1184, we said that *Natl. Tube Co.* had held that "the commissioner must take taxpayer's properly prepared books as he finds them." Thus, the properly recorded value shown on the books of the taxpayer is the value he is to report on the franchise tax return.

**{¶ 18}** Bush & Cook, however, argues that this book-value rule applies only to valuing the property and not to characterizing the property as a tangible or intangible asset. However, the characterization of property is part of valuing it. Here, Bush & Cook employed different elements to value the disputed leases, the intangible assets, *vis a vis* the operating leases, the tangible assets. To illustrate, Bush & Cook valued the disputed leases as intangibles at their gross investment value—minimum lease payments receivable plus estimated residual values

(represented by the relevant purchase-option price), less unearned income, refundable advance deposits, and reserves for lease losses. But, Bush & Cook valued the vehicles leased under the operating leases as tangibles—the cost of the leased vehicle plus lease payments receivable, less allowance for doubtful accounts, refundable advance deposits, and accumulated depreciation. Thus, the way in which Bush & Cook characterized all its leases dictated how it valued them. Bush & Cook treated the disputed leases as intangible assets and valued them accordingly.

{¶ 19} Bush & Cook characterized, treated, and valued these leases as intangible assets and has no sound basis to characterize them any other way. Recharacterizing and revaluing the leases as tangibles will result in a "tremendous amount of work, which would be involved in reappraising each year all the assets of every corporation," which we shunned in *Natl. Tube Co.*

{¶ 20} As to the BTA's true-object test, to date we have applied this test only in net-income-base cases under R.C. 5733.051. Then, using the true-object test, we will determine why a taxpayer received income for holding an asset. *Twentieth Century-Fox Film Corp. v. Lindley* (1982), 2 Ohio St.3d 54, 2 OBR 596, 442 N.E.2d 766. We have not applied this test to determine the character of an asset under the net-worth method. With statute and case law imposing the valid book treatment of a corporation's assets on its net-worth methodology, we disagree with the BTA and decline to employ the true-object test here.

{¶ 21} Bush & Cook also argues that we should apply personal property tax cases to characterize the leases. It cites for support *Alzfan v. Bowers* (1963), 175 Ohio St. 349, 25 O.O.2d 250, 194 N.E.2d 852, and *Equilease Corp. v. Donahue* (1967), 10 Ohio St.2d 81, 39 O.O.2d 88, 226 N.E.2d 721. In *Alzfan*, paragraph three of the syllabus, we held a lease that transfers title to property to the lessee, when the lessee must pay a certain sum, to be a conditional sale of the property to the lessee. On the other hand, in *Equilease Corp.*, we held that personal property

is not sold under a lease if the lessee is given only an option to purchase the equipment at the termination of the lease. Bush & Cook contends that, under these cases, the disputed leases are not sales of the property because the lessee simply owns an option to purchase the equipment.

{¶ 22} These cases are inapposite. According to *Armour & Co.,* property tax cases are irrelevant to franchise tax cases because the property tax is a tax on the value of the property. A franchise tax, instead, is a tax on the privilege of doing business in Ohio based upon the reasonable approximation of the value of the corporation. Indeed, in *Natl. Tube Co.*, we pointed out a distinction between the franchise tax and the personal property tax. There, we noted that the General Assembly had not given the commissioner authority in assessing franchise tax to increase or decrease the book value of personal property as it had done in assessing the personal property tax.

{¶ 23} Finally, Bush & Cook claims that its treatment of the leases as depreciable assets in its federal return is a factor in determining the substance of the leases. However, in *Gray Horse, Inc.* we stated that the franchise tax does not require the net-worth accounting method to be consistent with the federal return method. Thus, Bush & Cook's federal treatment of these leases does not control the franchise tax treatment of them. Accord *Natl. Tube Co.*

{¶ 24} Consequently, we affirm the BTA's decision. However, we reject application of the true-object test in this case. Instead, we hold that Bush & Cook's treatment of these leases as intangible assets in its properly recorded books is the way it must treat them for the franchise tax.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————