FEDERATED DEPARTMENT STORES, INC., APPELLEE,
v. WILKINS, TAX COMMR., APPELLANT.

[Cite as *Federated Dept. Stores, Inc. v. Wilkins,*
107 Ohio St.3d 165, 2005-Ohio-6181.]

(No. 2004–0273—Submitted May 11, 2005—Decided December 7, 2005.)

O'CONNOR, J.

{¶ 1} At issue in this case is whether appellee, Federated Department Stores ("Federated"), was correct in reporting a negative net worth on its 1993 Ohio corporation franchise tax report. We find that the record supports the determination by the Board of Tax Appeals that it was, and thus we affirm that decision.

{¶ 2} Federated filed for bankruptcy protection in 1990. As Federated prepared to emerge from bankruptcy, it filed its 1993 Ohio corporate franchise tax report indicating that the company's taxable net worth in Ohio on February 1, 1992, was negative $334,536,641. In that same report, which was filed with the Tax Commissioner in 1993, Federated determined its Ohio franchise tax obligation to be $50 for the 1993 tax year.

{¶ 3} The Tax Commissioner audited the 1993 tax report and concluded that Federated's taxable net worth was actually $430,069,566 on February 1, 1992, and the company therefore owed corporate franchise taxes totaling $2,430,539.87. Federated filed a petition for reassessment with the Tax Commissioner under R.C. 5733.11, but the Tax Commissioner did not change his position in his final determination issued in December 2001.

{¶ 4} Federated appealed to the Board of Tax Appeals ("BTA"), which reversed the Commissioner's decision, finding that Federated had properly reported a negative net worth on its 1993 corporate franchise tax report. The BTA found that the accounting records on which Federated relied in completing that report had been prepared in conformance with generally accepted accounting principles and that the report accurately reflected the company's net worth as of February 1, 1992. Therefore, the BTA held that Federated had properly reported its net worth and calculated its franchise tax liability for that year.

{¶ 5} The Tax Commissioner appeals from that decision.

{¶ 6} In reviewing a BTA decision, this court looks to see whether that decision was reasonable and lawful. *Columbus City School Dist. Bd. of Edn. v. Zaino* (2001), 90 Ohio St.3d 496, 497, 739 N.E.2d 783. "[W]e will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion." *Gahanna–Jefferson Local School Dist. Bd. of Edn. v. Zaino* (2001), 93 Ohio St.3d 231, 232, 754 N.E.2d 789. But "[t]he BTA is responsible for determining factual issues and, if the record contains reliable and probative support for these BTA determinations," we will affirm them. *Am. Natl. Can Co. v. Tracy* (1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483.

{¶ 7} R.C. Chapter 5733 describes the corporate franchise tax that Ohio imposes on each corporation "for the privilege of exercising its franchise during the calendar year." R.C. 5733.01(A). The tax is based on the "value of the issued and outstanding shares of stock" of the company, and that value is to be determined each year on the date that marks the "beginning of the corporation's annual accounting period that includes the first day of January of the tax year." R.C. 5733.05.

{¶ 8} In 1992, Federated maintained its books on a fiscal-year basis, and its fiscal year ended on February 1, 1992. According to Ohio Adm.Code 5703-5-03, however, for franchise-tax purposes, Federated's fiscal year was deemed to end on January 31. The following day—February 1, 1992—marked the "beginning of the corporation's annual accounting period" that included January 1, 1993. See R.C. 5733.05. Therefore, February 1, 1992, was the critical date for determining Federated's net worth on its 1993 corporate franchise tax report.

{¶ 9} The taxable net worth of a company should be determined from the company's books and accounting records. See, e.g., *Bush & Cook Leasing, Inc. v. Tracy* (1997), 79 Ohio St.3d 87, 91, 679 N.E.2d 1077 ("the properly recorded value shown on the books of the taxpayer is the value he is to report on the franchise tax return"); *Edwards Industries, Inc. v. Tracy* (1996), 74 Ohio St.3d 643, 646, 660 N.E.2d 1181 ("the [tax] commissioner must take taxpayer's properly prepared books as he finds them"); *Gray Horse, Inc. v. Limbach* (1993), 66 Ohio St.3d 631, 614 N.E.2d 1038 (when a company keeps its accounting records under a sound and generally recognized and approved accounting system, that company may rightly rely on those records in completing its Ohio corporate franchise tax report); *Natl. Tube Co. v. Peck* (1953), 159 Ohio St. 98, 106–107, 50 O.O. 74, 111 N.E.2d 11 (the book value of a company "should be determined [for franchise-tax purposes] from books which were generally regarded as the accounting records of such corporation and were kept in the ordinary course of business in accordance with any sound and generally recognized and approved accounting system"). In this particular case, however, these decisions do not provide definitive answers, because the financial records relied on by both the Tax Commissioner and

Federated appear to have been kept in accordance with generally accepted accounting principles.

{¶ 10} When it emerged from bankruptcy in early February 1992, Federated adopted "fresh-start reporting," the standard accounting method used by companies emerging from Chapter 11 bankruptcy. See Statement of Position 90–7, Financial Reporting by Entities in Reorganization Under the Bankruptcy Code, issued by the Accounting Standards Executive Committee of the American Institute of Certified Public Accountants (1990) ("SOP 90–7"). Under fresh-start reporting, the negative-equity position of the formerly insolvent entity that filed for Chapter 11 protection is eliminated, and the financial records of the "new" entity reflect its new assets and liabilities, which are quite distinct from those of the former bankrupt company. As the BTA noted, SOP 90–7 indicates that fresh-start reporting should be adopted by an entity emerging from Chapter 11 bankruptcy only "when all material conditions precedent" to the implementation of the company's reorganization plan are resolved.

{¶ 11} In determining Federated's franchise tax liability, the Tax Commissioner relied upon Federated's 1991 annual report and "Form 10–K," which had been filed with the Securities and Exchange Commission ("SEC") in April 1992 and which purported to describe the company's financial position as of February 1, 1992. These reports expressly state that the company adopted fresh-start reporting on February 1, 1992, and reflect a positive net income and a positive shareholders' equity for Federated as of February 1, 1992.

{¶ 12} According to Federated, however, the 1991 annual report was designed to reflect the company's financial position after it emerged from bankruptcy, even though the company had not yet actually done so on February 1, 1992, when its fiscal year ended. Although the bankruptcy court approved Federated's reorganization plan on January 10, 1992, the plan did not take effect until February 4, 1992, when all the conditions to its effectiveness were satisfied or waived. Pursuant to SOP 90–7, Federated, therefore, should not have adopted fresh-start reporting until that date.

{¶ 13} Testimony before the BTA established that although the 1991 annual report and Form 10–K stated that Federated adopted fresh-start reporting on February 1, 1992, Federated officials made that statement based on their interpretation of an auditing directive known as "AU Section 560," issued by the American Institute of Certified Public Accountants. According to expert testimony, the adoption of fresh-start reporting and the company's emergence from bankruptcy on February 4, 1992, were such significant events for investors that they were properly included in the 1991 annual report, even though that report purported to describe the company's financial position on February 1, 1992, when Federated's fiscal year ended.

{¶ 14} Testimony before the BTA also established that Federated officials advised the SEC in writing in mid-February 1992 about the company's plan to prepare its 1991 annual report in the format that was ultimately adopted by the company a few months later. Federated's senior vice president and its auditor both testified that the SEC gave verbal approval to the proposed format.

{¶ 15} Moreover, Federated's auditor and a professor of accounting at Pepperdine University both testified that the 1991 annual report prepared by Federated was consistent with generally accepted accounting principles, even though that report included information about an event—the company's adoption of fresh-start reporting on February 4, 1992—that occurred after the close of the fiscal year on February 1, 1992. In addition, financial records presented by Federated before the BTA further support Federated's claim that the company still had a negative net worth on February 1, 1992.

{¶ 16} After reviewing the evidence, the BTA found that Federated had emerged from bankruptcy on February 4, 1992, and that Federated had reported that emergence (and simultaneous fresh start) in its 1991 annual report covering a fiscal year that ended on February 1, 1992. According to the BTA, February 4, 1992, was the earliest possible date that Federated could have adopted fresh-start reporting because various material conditions precedent to the implementation of the company's reorganization plan were not satisfied until then. In the BTA's view, books and records presented by Federated at the BTA hearing showed that Federated "did not actually adopt fresh start reporting until its emergence from bankruptcy on February 4, 1992." The BTA found that those books and records had been "prepared in conformance with generally accepted accounting principles" and that the 1993 franchise tax report accurately reflected the company's book value as of February 1, 1992.

{¶ 17} After reviewing the record before us, we find that the BTA's conclusion that Federated adopted fresh-start accounting on February 4, 1992, is a lawful and reasonable one that is supported by the evidence. Federated properly reported a negative net worth in its 1993 franchise tax report. We, therefore, affirm the decision of the BTA.

Decision affirmed.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER, J., dissents.

———————

**PFEIFER, J., dissenting.**

{¶ 18} It was the best of times, it was the worst of times. But it was not the tale of two cities. It was two tales of one company on one day. February 1, 1992: a date when Federated Department Stores, $334,536,641 in debt (give or take a shilling), was struggling for its very survival. One can imagine the remaining management team in the gruel line in the company cafeteria: "More, please." The other February 1, 1992: A shiny new Federated Department Stores, with $430,069,566 under its belt, looks forward with great expectations toward the future. Which story Federated tells depends on the audience. For the Tax Commissioner, it is tragedy. For the shareholders, it is triumph. Either way, it is fiction.

{¶ 19} The date we should be focusing on is February 4, 1992. That is the day that the *reorganized* Federated emerged from bankruptcy. The Federated of February 4, 1992 was not the same Federated that existed on February 1, 1992. As the majority writes, "[u]nder fresh-start reporting, the negative-equity position of the formerly insolvent entity that filed for Chapter 11 protection is eliminated, and the financial records of the 'new' entity reflect its new assets and liabilities, which are quite distinct from those of the former bankrupt company." Since Federated made a fresh start on February 4, that day marked "the beginning of the corporation's annual accounting period that includes the first day of January of the tax year." R.C. 5733.05. The "fresh start" date marked the beginning of Federated's fiscal year. Federated's franchise tax should have been assessed as of that day.

_____

Jones Day and Charles M. Steines, for appellee.

Jim Petro, Attorney General of Ohio, and Richard C. Farrin, Senior Deputy Attorney General, for appellant.